This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Yvette Buford, has appealed from the judgment of the Summit County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of her child, "T.B.," to the Summit County Children's Services Board ("CSB"). This Court affirms.
 I
{¶ 2} T.B. was born December 7, 1989, to Appellant and Damon Law ("Law"). At the time CSB initially became involved with the child, T.B. and two younger half-brothers were living with Law and his paramour, Monique Churn ("Churn"). Law and Churn were the biological parents of the half-brothers. Appellant was living in Cleveland with three other children, but her specific address and phone number were unknown.
{¶ 3} CSB became involved in this matter when T.B. presented at school with red, raised welt marks on her arms, and marks above her eye, below her neck and on her leg. All three children were taken into custody by the Akron Police Department on March 24, 2000, pursuant to Juv.R. 6. The two younger children were eventually returned to their parents and are not a part of this appeal.
{¶ 4} On March 27, 2000, CSB filed a sworn complaint alleging that T.B. was abused, neglected, and dependent. The trial court granted emergency temporary custody of T.B. to CSB and set the matter for a shelter care hearing. Counsel was appointed for both Law and Churn.
{¶ 5} At the shelter care hearing, T.B. indicated that Law and Churn hit her with a plastic baseball bat for taking fake fingernails. The trial court found probable cause to continue T.B. in the emergency temporary custody of CSB. The court set the matter for adjudicatory and dispositional hearings. A guardian ad litem was appointed for T.B.
{¶ 6} A case plan was developed and filed with the court. The case plan listed the following concerns: (1) physical injury leaving welts or marks on the children, (2) verbal abuse and/or aggression toward others in the home, and (3) T.B. taking things that did not belong to her and lying when confronted about it. CSB recommended that: (1) both Law and Churn complete a parenting skills program in order to learn appropriate discipline methods, (2) family members participate in anger management classes or individual counseling to address issues of anger, and (3) T.B. attend community-based counseling to address issues that cause negative behavior.
{¶ 7} The adjudicatory hearing was continued because Appellant's whereabouts were still unknown. Eventually, however, Appellant was served by publication and the hearing was held on May 22, 2000, though Appellant did not attend. The parties present in court agreed, and the court found, that T.B. was a dependent and neglected child. On July 10, 2000, pursuant to an agreement, the court ordered a disposition of temporary custody. The court adopted the case plan filed earlier. Sibling visitation was ordered between T.B. and one of her half-brothers; the other was an infant.
{¶ 8} By the December 2000 review hearing, Appellant's whereabouts were still unknown. T.B. was still displaying the same behavioral issues and continued in counseling on victim abuse, past neglect, abandonment, and impulse control disorder. Law and Churn participated sporadically in counseling and classes for parenting and anger management. Visitation was extended to include overnight visits.
{¶ 9} At the sunset review hearing on April 13, 2001, the court granted CSB's motion for a six-month extension of temporary custody in order to develop a permanency plan with either a dispositional order of permanent custody or to seek reunification with parents.
{¶ 10} Upon finally learning from Law that her daughter was in the custody of CSB, Appellant contacted the agency on May 18, 2001. The case plan was amended to include Appellant and was filed with the court on July 10, 2001. The case plan indicated that Appellant was to maintain contact with CSB regarding the case for her child, maintain employment and appropriate housing, participate in counseling with T.B., maintain contact/visits with T.B. to obtain/maintain a parent-child bond, and participate in visitation as determined.
{¶ 11} A motion for permanent custody of T.B. was filed on September 12, 2001, and a hearing was conducted before a magistrate on January 10, 2002. Appellant was present at the hearing with counsel. Law's attorney was present on his behalf, and indicated that Law desired to relinquish custody of the child because he understood that was T.B.'s wish.
{¶ 12} On February 6, 2002, the magistrate entered her decision, placing the child in the permanent custody of CSB and terminating the parental rights of Law and Appellant. The juvenile court judge adopted the decision of the magistrate, subject to objections. Appellant filed objections to the decision. The trial judge ruled on those objections and entered judgment on May 6, 2002. Appellant has appealed from that judgment and has asserted two assignments of error for review. Law is not a party to this appeal.
 II Assignment of Error Number One {¶ 13} "THE JUVENILE COURT'S AWARD OF PERMANENT CUSTODY TO THE CHILDREN SERVICES BOARD IS NOT IN THE BEST INTERESTS OF THE CHILD, IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE, AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
{¶ 14} Appellant has raised several arguments within this assignment of error. Each will be addressed in turn.
{¶ 15} Appellant has first argued that the trial court erred in concluding that T.B. had been in the temporary custody of CSB for twelve or more months in a consecutive twenty-two-month period. Appellant has contended that R.C. 2151.414(B)(1)(d) requires that the twenty-two month time period must expire before a court can make a finding that a child has been in the custody of a public agency for twelve of the last twenty-two consecutive months and that, therefore, the finding of the trial court was premature and erroneous. The argument is without merit.
{¶ 16} R.C. 2151.414(B) sets forth a two-part test that must be met before a trial court may grant a motion for permanent custody of a child filed by an agency. The first prong of the test requires a determination of the best interest of the child, pursuant to R.C.2151.414(D). The second prong requires a finding from among four options:
 {¶ 17} "(a) * * * [T]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
{¶ 18} "(b) The child is abandoned.
 {¶ 19} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 20} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1).
{¶ 21} Therefore, one of the statutory options which satisfies the second prong of the two-part test requires proof that the child has been in temporary custody "for twelve or more months of a consecutive twenty-two month period[.]" R.C. 2151.414(B)(1)(d).
{¶ 22} Appellant has not disputed that T.B. had been in the custody of CSB for at least twelve months. In fact, the record establishes that the child had been in the temporary custody of CSB for over fifteen months at the time the motion for permanent custody was filed. Rather, Appellant has insisted that CSB was barred from filing a motion for permanent custody until twenty-two months had passed. Appellant has offered no authority in support of this position.
{¶ 23} There is nothing in the plain language of the statute that requires a public agency to wait until a child has been in its custody for twenty-two months before filing a motion for permanent custody. The statute requires only that the child must have been in the custody of a public agency for twelve or more months of a consecutive twenty-two month period. This might include a situation where a child had been in temporary custody for six months on one occasion, was briefly out of agency custody, and then returned to temporary custody for another six months — all within a consecutive twenty-two month period. It may also include a situation where a child has been in the temporary custody of an agency for twelve consecutive months. In either event, once a child has been in temporary custody for at least twelve months out of twenty-two consecutive months, the second prong of the two-part test set forth in R.C. 2151.414(B)(1) is met. In this case, T.B. was in custody for over fifteen consecutive months. Accordingly, Appellant's argument is without merit.
{¶ 24} Appellant has next contended that the trial court's finding that it was in the best interest of the child to be placed in the permanent custody of CSB was not supported by clear and convincing evidence. R.C. 2151.414(D) provides that, in determining the best interest of the child, the court shall consider "all relevant factors," including, but not limited to, the following:
 {¶ 25} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 26} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 27} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 28} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 29} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
{¶ 30} In reviewing Appellant's argument, we consider the evidence presented at the hearing upon each of the relevant factors. In regard to the first factor, there was a great deal of evidence before the court that Appellant had had very little interaction or interrelationship with T.B. over the past several years.
{¶ 31} There is no evidence in the record as to the relationship of Appellant and her daughter before June of 1998. Appellant testified that T.B. went to live with Law at that time. There is some suggestion that Appellant saw the child on September 15, 1999. Appellant stated she did not learn that the child was in CSB's custody until May 2001. According to Appellant, when she called Law's house before that time, Law concealed the child's absence and told her T.B. was not home or that T.B. was "OK." The clear implication of these facts is that Appellant had no personal communication with her daughter for the twenty months immediately preceding her May 2001 discovery that the child was in CSB's custody, and negligible contact for nearly fifteen months before that.
{¶ 32} After learning that T.B. was in CSB's custody and that proceedings were well underway, Appellant had six months in which to attempt to re-establish a relationship with her daughter. During that time, according to her own testimony, Appellant failed to attend the joint counseling session or make any effort to reschedule it, failed to attend court hearings except for the permanent custody hearing itself, saw her daughter twice, but only when the foster family brought the child to her,[1] did not write to her daughter and only spoke to her on the telephone when T.B. initiated the contact.
{¶ 33} Julie Kirven, a CSB caseworker, provided additional evidence regarding the relationship between Appellant and the child. She testified that Appellant contacted her on May 18, 2001. Kirven updated her on T.B.'s situation and informed her of the next court hearing on July 12. Kirven spoke to Appellant again on June 8 and notified her of a joint counseling session on June 15, explaining that visitation would not begin until counseling began. Appellant missed the joint counseling appointment. Kirven left a telephone message on June 21, to see why Appellant did not attend. Appellant did not respond. By Appellant's own testimony, she did not call back until the next month. Appellant did not attend the July 12 court hearing either.
{¶ 34} Kirven met with the child after the court hearing on June 15 and was informed by T.B. that she had not talked with her mother in a month. T.B. also said that her mother does not call her; rather, the child calls her mother.
{¶ 35} Kirven reported that she left several messages for Appellant that were not returned. Kirven spoke with Appellant again on October 4 and Appellant admitted that she had not spoken to T.B. since before school started in August, perhaps six weeks earlier. Kirven advised Appellant to come to the next court hearing and reschedule the Child Guidance Center appointment. Appellant agreed.
{¶ 36} Kirven and Appellant spoke again on December 6. Appellant had not yet re-scheduled the joint counseling appointment. When Kirven inquired as to why the appointment had not been made, Appellant only claimed that she was busy with two jobs and that Akron is too far. Appellant also admitted that she had not spoken with T.B.[2] and had not written her.
{¶ 37} In the meantime, efforts to provide visitation with the child's father largely failed. Law attended very sporadically and made no effort to call T.B. either. He also failed to comply with case plan requirements regarding classes for parenting and anger management. By September, Law was ready to relinquish custody.
{¶ 38} In sum, Appellant had no contact with the child for the first fifteen months she was in foster care. Further, in the two preceding years, she either was not informed enough of her daughter's well-being to know that she was being physically abused, or knew, but chose to do nothing about it. All told, Appellant's minimal efforts towards establishing or re-establishing a relationship with her daughter do not reflect the type of concern that was merited by the situation. This is particularly so when Appellant had some familiarity with the process. She testified that a Cuyahoga County agency had obtained temporary custody of another of her children and that she completed a case plan in order to regain custody of that child. Therefore, the evidence clearly fails to support a finding of a positive interaction or interrelationship between Appellant and T.B.
{¶ 39} In regard to the matter of the child's wishes, Sue Wheeler, T.B.'s counselor at the Child Guidance Center, testified that the child was excited when she learned that Law had found her mother and she hoped to go live with her. However, the counselor stated that the subsequent lack of contact with her parents was very difficult for the child. She felt abandoned when her mother missed the counseling appointment and was very upset that her family was not visiting her. Later, T.B. moved beyond those feelings and wanted to get on with her life. She came to believe it was better if she remained with her foster family. The counselor also testified that the child is emotionally mature for her age and had had no recent behavioral problems.
{¶ 40} Kirven testified similarly that the child has finally settled into her foster home and is comfortable there. She is getting along with her foster sister, is doing well in school, has demonstrated good behavior, and has a stable environment that meets her needs.
{¶ 41} Martha Hom, T.B.'s guardian ad litem, stated that T.B. has been with the same foster family for two years and is finally feeling secure. She is doing very well with them and has become quite attached to them. According to the guardian ad litem, T.B. speaks positively in regard to her current situation and desires to remain there. In the view of the guardian ad litem, granting permanent custody to CSB is in the best interest of this child.
{¶ 42} As to the third factor, the custodial history of the child demonstrates that T.B. has not lived with Appellant for over three and one-half years. There is no evidence in the record regarding any relationship between Appellant and T.B. before June 1998. From that time until March 2000, T.B. lived with her father. From March 2000 until the time of the permanent custody hearing, in January 2002, T.B. has lived with the same foster family.
{¶ 43} As to the fourth factor, Appellant has argued that while the trial court found that the child needs a legally secure placement, it failed to explicitly determine in its final order whether a legally secure placement could be achieved without a grant of permanent custody to the agency. A review of the record demonstrates that the initial decision of the magistrate articulates the child's need for a legally secure permanent placement and also specifically concludes "that type of placement cannot be achieved without a grant of permanent custody to [CSB]." This decision was adopted by the trial judge. While the final judgment entry of the trial judge fails to explicitly include this clause, that intent is apparent from a reading of the entirety of his judgment entry.
{¶ 44} Appellant suggests, on the other hand, that because she is employed and has an appropriate home, she can provide a legally secure placement for the child. The facts presented at the hearing below regarding the negligible relationship of the parent and child over the course of the preceding three and one-half years dispute that assertion. The ability to provide a secure home for a child consists of more than physical shelter. This argument is without merit.
{¶ 45} Accordingly, we conclude that the determination that it is in the best interest of the child to be placed in the permanent custody of CSB was supported by clear and convincing evidence and was not against the manifest weight of the evidence. Appellant's argument is without merit.
{¶ 46} Appellant has next asserted that the record did not support the juvenile court's finding that Appellant had her parental rights terminated in a prior case. This finding was not made in the decision by the magistrate, nor as the trial court adopted the decision of the magistrate; but only in the order ruling on the objections to the magistrate's decision. While the finding may not have been supported by evidence presented at the hearing, there was more than enough other evidence presented to establish clearly and convincingly that it was in the best interest of the child to grant permanent custody of the child to CSB. The argument is overruled.
{¶ 47} Appellant has next argued that the evidence does not support the court's finding that CSB made reasonable efforts to reunify Appellant and her daughter, as required by R.C. 2151.419. The issue here is not whether CSB could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. See In re Smith, 2nd Dist. No. 2001-CA-54, 2002-Ohio-1786, at ¶ 50. A review of the trial court's decision on reasonableness is based on an abuse of discretion standard. Id., citing In re Marrs (Dec. 28, 1998), 2nd Dist. Nos. 97-CA-79, 97-CA-80, 1998 Ohio App. LEXIS 6280. See, also, In reLavery, 9th Dist. No. 20852, 2002-Ohio-3031, at ¶ 31.
{¶ 48} Appellant has asserted that reasonable efforts were not made because it was Appellant who first contacted the CSB caseworker about this matter in May of 2001, that CSB did not amend the case plan until two months later, and two months after that, CSB filed its motion for permanent custody. Appellant has also asserted that CSB did not perform a home study or permit her to visit with her daughter. Appellant has sought to explain that her failure to attend the joint-counseling session with her daughter was due to transportation problems, that CSB failed to schedule another session and did not offer Appellant any "additional" transportation assistance. These arguments are without merit.
{¶ 49} The record indicates that CSB did make reasonable efforts to reunite Appellant with T.B. and prevent the continued removal of the child from Appellant's home. Specifically, CSB attempted to locate Appellant at the beginning of the case, despite the fact that neither the child nor the child's father knew her address or telephone number and despite the fact that Appellant had been essentially uninvolved in the child's life for years. CSB conducted a computer search, but mailings to the only address obtained came back as undeliverable.
{¶ 50} Further, the counselor set up a joint counseling session with T.B. for June 15 — even before the case plan was filed — so that visitation could potentially begin. In the meantime, Appellant was able to call or write her daughter. The caseworker notified Appellant of the date of the next court hearing. Bus passes to Akron were offered for transportation. The record fails to indicate that Appellant sought "additional" help with transportation during the proceedings below, nor does she now indicate specifically what that help might have been.
{¶ 51} A lack of communication with T.B. as well as caseworkers and counselors was a recurring theme for Appellant. Appellant's case plan explicitly required her to maintain contact with CSB regarding the case, in addition to obtaining or maintaining a relationship with her daughter. Appellant failed to take advantage of any of these opportunities to establish or re-establish a relationship with her daughter and to demonstrate a commitment to her. Accordingly, we conclude that the trial court did not abuse its discretion in finding that CSB made reasonable efforts to reunite Appellant with the child.
{¶ 52} Appellant's remaining arguments under this assignment of error relate to findings made pursuant to R.C. 2151.414(E) and the question of whether the child cannot be placed with a parent within a reasonable time or should not be placed with a parent. Because the trial court properly found that permanent custody was in the best interest of the child and that the child had been in the temporary custody of CSB for twelve or more months of a consecutive twenty-two month period, the trial court was not required to make an additional finding that the child could not or should not be placed with a parent within a reasonable time. SeeIn re Fox (Sept. 27, 2000), 9th Dist. Nos. 00CA0038 — 00CA0041, at 10-11. See, also, R.C. 2151.414(B)(1). This argument is without merit.
 Assignment of Error Number Two {¶ 53} "THE JUVENILE COURT ERRED TO THE PREJUDICE OF APPELLANT BY PERMITTING THE CHILD'S CHILD GUIDANCE CENTER COUNSELOR TO OFFER OPINION TESTIMONY REGARDING THE BEST INTERESTS OF THE CHILD."
{¶ 54} Through this assignment of error, Appellant has asserted prejudicial error in allowing Sue Wheeler, the child's counselor, to respond to the question of why she felt permanent custody was in the best interest of the child. Appellant's counsel entered an objection to the testimony on the basis of lack of foundation. The magistrate overruled the objection and allowed the response as opinion evidence.
{¶ 55} The relevant testimony was as follows:
 {¶ 56} "Q. Being her counselor over the past year, do you have a recommendation as to what would be in the best interest of [T.B.]?
{¶ 57} "A. I think permanent custody.
{¶ 58} "Q. And why?
 {¶ 59} "A. Because I don't think that either of her parents have what it takes to be a good parent to her. I think that she needs a parent who is going to be there for her, who is able to — you know, they — probably her parents do care about her, but I think in terms of setting priorities in their life in terms of —
{¶ 60} [Appellant's attorney]: Objection.
 {¶ 61} [The witness]: — taking care of her, that doesn't seem to be the case."
{¶ 62} Appellant has argued on appeal that the witness lacked the necessary foundational requirements of personal perception and observation in order to answer the second question because she never personally met Appellant and had only spoken to her once on the telephone.
{¶ 63} The initial question to the witness, posed without objection from Appellant, was not premised upon the witness' knowledge of Appellant, but rather upon the fact that Wheeler had counseled the child for over one year. The witness previously indicated that she had diagnosed T.B. to be a victim of neglect. She certainly was aware of the difficulties of locating and contacting Appellant. She knew that Appellant had not appeared for joint counseling sessions or court hearings and she was aware of T.B.'s great disappointment in her mother's failure to appear for those sessions.
{¶ 64} Appellant objected to Wheeler's response to the follow-up question because Wheeler had not met Appellant. However, Wheeler responded to that second question, essentially by addressing the child's needs and in that context. She stated that the child "needs a parent who is going to be there for her," and she questioned the parental "priorities" which resulted in not "taking care of her." Based upon her own personal observations and perceptions, Wheeler could reasonably conclude that "this parent does not have what it takes to be a good parent to her." We find that the trial court did not abuse its discretion in permitting this testimony. The second assignment of error is without merit.
 III
{¶ 65} Appellant's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
BATCHELDER, J. CONCURS.
[1] Appellant also stated that she inadvertently ran into her daughter at the Cleveland Clinic. Such a fortuitous circumstance can hardly be considered as part of an effort to develop a relationship.
[2] The record is a little unclear on this point. Appellant may have spoken with the child at the time of her birthday; however, even that call was placed by the child.